UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES A. CALLIHAN III
4840 Boston Common Gln
Bradenton, FL 34211

        Plaintiff,

v.

CHRISTINE E. WORMUTH
SECRETARY OF THE UNITED STATES ARMY
101 Army Pentagon
Washington, DC 20310-0101

        Defendant.

Case No. _____

## COMPLAINT

Plaintiff James A. Callihan III, by and through counsel, files this Complaint against Defendant, Christine E. Wormuth, Secretary of the United States Army in her official capacity, and respectfully alleges as follows:

### NATURE OF THE ACTION

1. This is an action seeking judicial review under the Administrative Procedures Act, 5 U.S.C. § 701, et seq., for the wrongful denial of a petition to correct Plaintiff's medical records which would have entitled him to a Purple Heart due to a severe concussion he suffered on December 30, 2003 during Operation Iraqi Freedom. The mission of the Army Board for Correction of Military Records ("ABCMR") is to "correct errors in or remove injustices from Army military records." A significant error and injustice has occurred in this case by failing to correct Plaintiff's medical records, despite ample evidence that Plaintiff suffered injuries which would entitle him to the Purple Heart.

1

2.      On or about August 20, 2019, the ABCMR, acting on behalf of the Secretary of the United States Army, the Honorable Christine E. Wormuth, wrongfully denied Plaintiff's petition for the correction of his Army records which would have supported his eligibility for a Purple Heart.

3.      On or about August 17, 2023, the ABCMR again denied Plaintiff's petition upon reconsideration. The ABCMR's actions on August 20, 2019 and August 17, 2023 were arbitrary and capricious and relief is requested. *See* 5 U.S.C. § 706.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5.      This Court also has jurisdiction under § 706 of the Administrative Procedure Act, 5 U.S.C. § 706.

6.      Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1).

## PARTIES

7.      Plaintiff James A. Callihan III ("SGT Callihan") is a veteran of Operation Iraqi Freedom and an applicant before the ABCMR who was adversely affected by the final agency action denying his request for correction of his military records which support his entitlement to a Purple Heart.

8.      Defendant Christine E. Wormuth ("Defendant") is the Secretary of the United States Army and is named as Defendant in her official capacity only. In correcting military records, the Secretary of the United States Army acts through the ABCMR. The Secretary of the United States Army, acting through the ABCMR, is authorized to correct any Army military record when she "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

**FACTUAL BACKGROUND**

A.   **The December 30, 2003 IED Attack in Iraq**

9.   SGT Callihan served in the United States Army ("the Army") from 2001 to 2005. In May 2003, he was deployed to Iraq as part of Operation Iraqi Freedom, in which he served with the 40th Combat Engineer Battalion, commanded by Lieutenant Colonel Mark B. Coats ("LTC Coats").

10.   On or about December 30, 2003, SGT Callihan was driving a HUMVEE in a convoy that was taking LTC Coats to meet a local Iraqi official for a recurring infrastructure meeting. While in route, the convoy was attacked by an improvised explosive device ("IED") that went off approximately two meters or less from the driver's side of the HUMVEE that SGT Callihan was driving.

11.   As a result of the IED attack, SGT Callihan was thrown across the HUMVEE to the passenger side of the vehicle and rendered unconscious.

12.   Following the attack, SGT Callihan's convoy returned to their Forward Operating Base ("FOB").

13.   At the FOB, SGT Callihan and other members of his unit were sent for diagnosis by Major Dr. Robert Wood-Morris ("Dr. Wood-Morris"), the Brigade Surgeon. Dr. Wood-Morris diagnosed SGT Callihan and others as having concussions and ordered them to the 28th Combat Support Hospital (the "28th CSH") for further diagnosis. There, SGT Callihan was ordered back to his barracks under a restriction of only light duty, which required him to stay within the FOB for a week for observation purposes.

14. On the same day of the IED attack, LTC Coats recommended SGT Callihan for an Army Commendation Award. The award was approved by the 1st Armored Division commander COL Ralph Baker and stated that SGT Callihan sustained a "severe concussion."

15. In addition, LTC Coats recommended SGT Callihan and the remainder of his convoy for the award of the Purple Heart. However, COL Baker denied the recommendation.

  **B.**  **SGT Callihan's 2019 Application to ABCMR**

16. Army regulations dictate that a Purple Heart shall be awarded to a soldier who is "wounded . . . in any action against an enemy of the United States." Army Reg. 600-8-22, para. 2–8(b)(1). Specifically, the regulation states that the Purple Heart shall be awarded for "injury caused by enemy emplaced . . . improvised explosive device," including for "concussions (and/or mild traumatic brain injury (mTBI)) caused as a result of enemy-generated explosions that result in either loss of consciousness or restriction from full duty due to persistent signs, symptoms, or clinical finding, or impaired brain function for a period greater than 48 hours from the time of the concussive incident." *Id.*, at paras. 2–8(f)(2) and (f)(6).

17. At the time of the incident in this case, the regulations regarding the Purple Heart award for brain injuries were unclear, but were later clarified. Importantly, the Army made the guidance retroactive to September 11, 2001, and has explicitly encouraged soldiers to re-apply for a Purple Heart if previously denied. *See Army Clarifies Award of Purple Heart for Concussion*, U.S. ARMY (June 20, 2011).

18. Specifically, later guidance clarifying the award of a Purple Heart in cases of concussion provide examples of qualifying concussive symptoms, including "diagnosis of concussion or mild traumatic brain injury," "any period of loss or a decreased level of consciousness," and "neurological deficits." *Id.*

19. This later guidance also provided examples of the types of treatment which would indicate a concussion diagnosis, including "limitation of duty following the incident." *Id*.

20. On March 12, 2019, SGT Callihan petitioned the ABCMR for a correction of his military records regarding the concussion he suffered in order to receive the Purple Heart (the "2019 Petition"). On August 20, 2019, the ABCMR denied SGT Callihan's petition (the "2019 ABCMR Decision"), citing "insufficient" medical records related to SGT Callihan's concussion.

C. **SGT Callihan's Efforts to Obtain Medical Records**

21. Since the 2019 ABCMR Decision, with the assistance of U.S. Congressman Vern Buchanan and legal counsel, SGT Callihan contacted the following units of the U.S. Army, Department of Veteran Affairs, and other government agencies in an effort to locate the military medical records covering his treatment after the December 2003 IED attack: (1) 1st Armored Division; (2) Veterans Administration Records Management Center; (3) Army Human Resources Command; (4) Army Office of the Surgeon General and 28th CSH; (5) National Archives; (6) Army Records Management Division; and (7) National Personnel Records Center.

22. None of these agencies had any medical record regarding the December 2003 IED attack. As such, the medical records were never returned from Iraq to the United States and, presumably, these records were either lost, misplaced, or destroyed by the Army, through no fault of SGT Callihan.

23. In 2020, Dr. Wood-Morris, who had since retired, was contacted. Dr. Wood-Morris noted that he had some memory of the incident and that he remembers that the convoy "got rocked."

24. Dr. Wood-Morris further noted that "COL Coats' description of events clearly indicates James Callihan sustained a traumatic brain injury as a result of IED."

25. When asked about the medical records, Dr. Wood-Morris stated that "[m]edical encounters at that time were primarily documented on paper … However, such systems are imperfect and it is certainly possible that particular physician-patient encounter might not make it into the final record back home."

    **D.**    **SGT Callihan's Request for Reconsideration**

26. On or about November 4, 2022, SGT Callihan submitted an application for reconsideration of the 2019 ABCMR Decision (the "2022 Application"). In his request, SGT Callihan provided supplemental documentation and recorded his efforts to locate his medical records.

27. The 2022 Application attached numerous documents in support, including the following critical documents:

    a.    An incident report, written the day of the IED attack, stating that "all members of the convoy were given examinations" by Dr. Wood-Morris.

    b.    Various eyewitness statements, including that the explosion "[threw] SPC Callihan from his seat," and that he was later evacuated to the 28th CSH.

    c.    A sworn eyewitness statement by LTC Coats, stating that "the brigade surgeon later determined that *all Soldiers in the convoy received a concussion*…" (emphasis added). This statement was repeated in LTC Coats' application for Combat Action Badges for soldiers in the convoy.

    d.    The Army Commendation Medal Commendation Recommendation submitted by LTC Coats, which states that SGT Callihan was "*diagnosed* with a *severe concussion*" (emphasis added). SGT Callihan ultimately received this award due to his "immediate reactions under pressure, while wounded."

6

      e.      A buddy statement in support of SGT Callihan receiving the Purple Heart, completed by the soldier seated in the passenger side of the HUMVEE that SGT Callihan was driving. This soldier later received a Purple Heart for injuries sustained in the same incident. The buddy statement notes that the "explosion occurred on [SGT Callihan's] side of the vehicle in which he took most of the blast in relation to where we were sitting in the vehicle. Simply put, *we received the same injuries from the same explosion and should receive the same award.* As you can see, I have received my medal by *submitting the same evidence as James Callihan has presented in the past*" (emphasis added).

    **E.**    **The ABCMR's 2023 Denial Upon Reconsideration**

28.    On or about August 17, 2023, the ABCMR denied SGT Callihan's application for reconsideration (the "2023 ABCMR Decision"), stating again that he provided "no contemporaneous medical record" to substantiate the injury.

    **F.**    **The ABCMR's Decisions Were Arbitrary, Capricious, and Contrary to Law**

29.    The 2022 Application differed from the 2019 Petition primarily in that SGT Callihan demonstrated that he conducted an exhaustive search for his military medical records and also provided numerous documents to support his petition to correct his medical records. The 2022 Application specifically argued that he suffered an error or injustice due to the loss, misplacement, or destruction of military medical records and that the evidence he otherwise was able to gather and submit substantiated his entitlement to the Purple Heart.

30.    The 2023 ABCMR Decision failed to address the importance of the fact that the records of SGT Callihan's December 2003 concussion were lost, misplaced, or destroyed by the Army through no fault of his own. It is arbitrary and capricious for the ABCMR to state that SGT

7

Callihan is not entitled to a Purple Heart because he has no supporting medical records, when the error stated in his application is that the Army itself lacks the medical records of his injury.

31. The ABCMR "determined the evidence of record was sufficient to render a fair and equitable decision" and that SGT Callihan presented "no contemporaneous medical record showing the applicant received wounds/injuries caused by enemy forces that required treatment by medical personnel."

32. According to the ABCMR, SGT Callihan did not provide evidence "indicat[ing] he suffered, as a result of hostile action, a concussion or TBI so disabling as to cause . . . impaired brain function for a period greater than 48 hours from the time of the incident." The 2023 ABCMR decision also stated that "the applicant has no medical documentation showing a loss of consciousness nor that shows he was restricted from duty for a period equaling 48 hours or more."

33. This decision was arbitrary and capricious because SGT Callihan indeed submitted ample evidence that he sustained a severe concussion as a result of the IED explosion. SGT Callihan also provided evidence that he was on limited duty for a period of a week, being required to stay within the FOB for observation. The ABCMR focused its decision on the lack of contemporaneous medical records and did not address or consider the credibility, weight, or impact of the supplemental evidence provided by SGT Callihan. This failure was arbitrary and capricious.

34. The ABCMR decision was arbitrary and capricious because the Army regulations permit the review of documents other than medical records, specifically "[s]tatements from at least two individuals, other than the proposed recipient, who were personally present, observed the incident, and have direct knowledge of the event. *Alternatively, other official documentation may be used to corroborate the narrative*." Army Reg. 600-8-22, para. 2–8(i)(3)(b)(6) (emphasis added). ABCMR's failure to address this other documentation was arbitrary and capricious.

35. The 2023 ABCMR Decision was also arbitrary and capricious in that the ABCMR was aware that one other soldier who was in the same vehicle—seated further from the IED detonation than SGT Callihan—and who suffered the same injuries received the Purple Heart. Despite that this information was included in SGT Callihan's 2022 Application as further evidence of an error in his military record, the 2023 ABCMR Decision did not address this evidence nor correct SGT Callihan's medical records to award him the Purple Heart.

36. In addition to the ample evidence that SGT Callihan received a concussion and was placed on restrictive duty for approximately one week, the 2022 Application included some later medical records dated May 29, 2004, in which the physician noted SGT Callihan's complaint about the "IED blast in December 2003, and difficulty hearing." SGT Callihan also provided medical records from additional hearing tests conducted on or around January 21, 2005. These records indicate an impairment in SGT Callihan's hearing several months and two years following the incident.

37. This hearing impairment was not present in SGT Callihan's pre-deployment examination records, which were also attached to the 2022 Application.

38. The 2019 ABCMR Decision found these medical records insufficient. SGT Callihan's 2022 Application expressly noted an error in such finding, which mistakenly stated that these records were dated January 2, 2004, only 48 hours (or fewer) following the IED explosion.

39. The 2023 ABCMR Decision acknowledged this error, stating that it had "mistakenly concluded that the applicant had a hearing evaluation in Iraq a few days after the IED attack when the evaluation was actually conducted months later . . . which indicated that the applicant was still hav[ing] hearing issues."

40. Despite the ABCMR's acknowledgement of this crucial error, which goes directly to the severity and long-lasting nature of the combat injury, as required by Army regulations governing the award of the Purple Heart, it again apparently failed to consider this record medical evidence at all in the 2023 ABCMR Decision, finding only that SGT Callihan provided "no contemporaneous medical record."

41. The ABCMR's failure to discuss or consider this medical evidence was arbitrary and capricious.

42. The ABCMR failed to correct the error or injustice by refusing to amend SGT Callihan's military medical record to reflect his injury, diagnosis, and treatment as recorded in other official military records from the time of the incident.

## CAUSE OF ACTION

## COUNT I

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

43. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 42 above, as if fully set forth herein.

44. The ABCMR's decisions of August 2019 and August 2023 constitute a final agency action pursuant to 5 U.S.C. § 704.95. Under Section 706(2) of the Administrative Procedure Act, a reviewing court may set aside final agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

45. The ABCMR's decisions of August 2019 and August 2023, denying correction of Plaintiff's military records to reflect injuries sustained in combat, contained manifest errors and failed to address the medical records lost, misplaced, or destroyed by the Army and to refute any

of the evidence submitted by Plaintiff demonstrating that there was an error in his military medical record, the correction of which would support his entitlement to receive the Purple Heart.

46.     Accordingly, the ABCMR decisions were arbitrary, capricious, an abuse of discretion or otherwise contrary to law and must be set aside pursuant to 5 U.S.C § 706(2)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, James A. Callihan III respectfully asks that this Court enter judgment as follows:

- a. Holding that the ABCMR's August 2019 and August 2023 decisions to deny Plaintiff's request for correction of his military records regarding the award of the Purple Heart, as arbitrary and capricious, an abuse of discretion or otherwise contrary to law;

- b. Ordering the ABCMR to correct Plaintiff's military records and ordering therefore that Plaintiff be awarded the Purple Heart;

- c. Remanding the issue to the ABCMR with specific guidelines in conjunction with Plaintiff's arguments and evidence; and

- d. Granting such other relief as the Court deems just and proper.

Dated: January 8, 2024                                    JAMES A. CALLIHAN III

*/s/ Brian W. Stolarz*
Brian W. Stolarz (DC Bar No. 466160)
Thomas E. Hirsch III (DC Bar No. 252262)
Stephanie H. Metherall (DC Bar No. 90008580)
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
brian.stolarz@nortonrosefulbright.com
thomas.hirsch@nortonrosefulbright.com
stephanie.metherall@nortonrosefulbright.com