UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES A. CALLIHAN, III,

    *Plaintiff*,

v().

DANIEL P. DRISCOLL, *Secretary of the United States Army*,

    *Defendant*.

Civil Action No. 24-49 (TJK)

## MEMORANDUM OPINION

Sergeant James A. Callihan, III, claims that he suffered a concussion after his convoy was attacked by an improvised explosive device in Baghdad in December 2003. He believes he is entitled to a Purple Heart based on that attack. But his medical records contain no evidence of any relevant injury or treatment. So he asked the Army Board for Correction of Military Records to correct his records so that he may receive that award. The Board denied his application and his subsequent motion for reconsideration, citing insufficient medical records. Plaintiff sued, arguing that the Board's denials were arbitrary and capricious. Both parties now move for summary judgment. Because the Court agrees with Plaintiff that the Board's decisions were arbitrary and capricious, it will grant Plaintiff's motion, deny Defendant's, and remand this matter to the Board for further proceedings consistent with this Memorandum Opinion.

## I. Background

Plaintiff contends he is entitled to the Purple Heart, a military decoration given to service-members who suffer certain qualifying injuries in the line of duty. A.R. 212[1]; *Haselwander v.*

---

[1] "A.R." citations refer to the Administrative Record filed by the parties in ECF No. 25.

*McHugh*, 774 F.3d 990, 993 (D.C. Cir. 2014).  But the United States Army denied his request for the award because he has no contemporaneous medical records documenting his alleged injury.  A.R. 212, 219.  So in 2016, he applied for the correction of his military records with the Army Board for Correction of Military Records ("Board").

Plaintiff provided the Board evidence in support of his application, including witness statements and Army records.  A.R. 191.  This evidence reflects that Plaintiff was driving a military vehicle in Baghdad, Iraq, that "was directly hit by an improvised explosive device (IED)" on December 30, 2003.  *Id.*; *see also* A.R. 284 (Army Commendation Medal certificate lauding Plaintiff's "actions during an [IED] detonation, in which he was wounded").  Plaintiff alleged that the explosion knocked him unconscious, and other evidence reflects that the blast threw him from his seat and left him "disoriented."  A.R. 191–92, 224.  Plaintiff also claimed that he and the other victims of the blast were later diagnosed with concussions, and he submitted evidence supporting this injury to the Board.  A.R. 191–92, 234; *see also* A.R. 223 ("[Plaintiff] would later be diagnosed with a severe concussion.").  Still, Plaintiff did not provide the Board with any Army medical records that documented his concussion diagnosis, symptoms, or treatment because those documents are "missing."  A.R. 191.

On August 20, 2019, in resolving his application, the Board noted that the regulations governing the Purple Heart require an applicant to provide "substantiating evidence to verify that he was injured, the wound was the result of hostile action, the wound . . . required treatment by medical personnel, and the medical treatment [has] been made a matter of official record."  A.R. 193.  The Board concluded that Plaintiff had presented "insufficient medical evidence to meet the regulatory standard" and denied his application to correct his records.  A.R. 191, 193.

Following that decision, Plaintiff searched for any Army medical records of his injury and

2

treatment. A.R. 21. But, according to Plaintiff, "[h]is medical records covering his treatment after being wounded in the IED attack in December 2003 cannot be located by the Army, the Department of Veterans Affairs or the National Personnel Records Center, and have apparently been lost or misplaced (or possibly destroyed)." A.R. 26. So he filed a motion for reconsideration with additional evidence purportedly proving "the circumstances of his injury and the subsequent concussion diagnosis"—but no medical records. A.R. 21.

On August 15, 2023, the Board denied that reconsideration motion as well. A.R. 5, 9. Though it concluded that the evidence showed that Plaintiff "was involved in an IED explosion in Iraq on 30 December 2003" and that he contended "he was thrown across the [vehicle] which he was driving," "was rendered unconscious," was "diagnosed as having concussive symptoms and ordered to received treatment," and was "ordered to quarters with only light duty for several days," it still found that Plaintiff's "contended incident does not meet the criteria for award of the Purple Heart." *Id.* at 9. That was because, the Board said, "[t]here are no contemporaneous medical record [sic] showing the applicant received wounds/injuries caused by enemy forces that required treatment by medical personnel." *Id.* The Board reemphasized that "[t]he governing regulation" requires servicemembers seeking a Purple Heart based on a concussion to provide "evidence" that the concussion was "so disabling as to cause either loss of consciousness or restriction from full duty due to persistent signs, symptoms, or clinical finding, or impaired brain function for a period greater than 48 hours from the time of the incident." *Id.* And it found that Plaintiff failed to meet this standard as he "has no medical documentation showing a loss of consciousness nor that shows he was restricted from duty for a period equaling 48 hours or more." *Id.*

Following this second denial, Plaintiff sued. ECF No. 1. He argues that the Board acted arbitrarily and capriciously in both decisions and that they should therefore be set aside under the

3

Administrative Procedure Act ("APA").  *Id.* ¶¶ 43–46.  Plaintiff now moves for summary judgment, and Defendant cross-moves for the same.  ECF Nos. 16, 19.

## II.     Legal Standard

Although both parties move for summary judgment, the ordinary summary-judgment standard does not apply.  Plaintiff "seeks review of agency action under the APA," so the Court "sits as an appellate tribunal."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  That is, the Court has no factfinding role because the case presents "a question of law." *See id.*  It must ask "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013).  On top of its purely procedural requirements, the APA directs courts to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious . . . or otherwise not in accordance with law."  5 U.S.C. § 706(2).

When evaluating a claim that agency action is arbitrary or capricious, courts must ensure that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action."  *FCC v. Fox Television Stations*, 556 U.S. 502, 513 (2009) (quotation omitted).  That standard does not empower a court to "substitute its judgment for that of the agency."  *Id.* (quotation omitted).  In other words, the agency's "policy choices" are not up for debate—only the "explanation it has given."  *Id.* at 530.  That explanation must include a "rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted).  The agency must also consider all "important aspect[s] of the problem"—that is, those Congress considered relevant.  *Id*.

Board decisions are entitled to even greater deference than other agency actions.  *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006).  The court needs to find only a "*minimal*[] . . . rational connection" between the facts in the record and the choice the Board made.  *Frizelle v.*

*Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (emphasis added) (quotation omitted). There is a "strong but rebuttable presumption that administrators of the military . . . discharge their duties correctly, lawfully, and in good faith." *Id.* at 177. To rebut this presumption, the plaintiff has the burden of showing "by cogent and clearly convincing evidence" that the decision was "the result of a material legal error or injustice." *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009) (quotation omitted). Yet when a military records correction board "fails to correct an injustice clearly presented" in the record, it is acting in violation of its statutory mandate and such a violation contrary to the evidence is "arbitrary and capricious." *Haselwander*, 774 F.3d at 996 (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975)).

**III.    Analysis**

    **A.    The Board Acted Arbitrarily and Capriciously in Denying Plaintiff's Applications for the Correction of His Military Records**

Plaintiff argues that the Board acted arbitrarily, capriciously, and contrary to law in denying his initial application to correct his military records and in denying his motion for reconsideration. Specifically, Plaintiff argues that *Haselwander v. McHugh*, 774 F.3d 990, compels the Court to set aside the Board's decisions. The Court agrees.

In *Haselwander*, the plaintiff was deployed in Vietnam as a veterinarian with the 49th Infantry Scout Dog Platoon when "a rocket exploded next to his tent as he slept." 774 F.3d at 994. The explosion threw Haselwander "through the walls of his tent," "knocked [him] unconscious," and riddled him with shrapnel. *Id.* Once he regained consciousness, two medics began treating his wounds. *Id.* But once Haselwander learned that the blast injured some of his dogs, he "left immediately after being treated by the medical personnel to attend to" them. *Id.* His hurried departure meant that "members of the medical staff did not fill out any paperwork on Haselwander's injuries and treatment." *Id.* Though "[a]nother member of his unit, . . . who was also

5

wounded as a result of the rocket blast and who was treated alongside Haselwander, was awarded the Purple Heart," Haselwander himself was not. *Id.*

Based on that rocket attack, Haselwander filed an application with the Board in 2007 asking that his records be "corrected to reflect that [he] received a [P]urple [H]eart." *Haselwander*, 774 F.3d at 994. He submitted a statement describing the attack against him, a photograph of his injuries, and the names of three veterans who could corroborate his story; but he admitted that "the medics never got the chance to fill out any paperwork on [him]." *Id.* at 994–95 (quotation omitted). Still, the Board denied his application. *Id.* at 995. It found that "there [was] no available evidence of record to show that the applicant was treated for a wound that was sustained as the result of enemy action." *Id.*

Haselwander then moved for reconsideration and provided "additional evidence," including "two letters from fellow soldiers corroborating that Haselwander was injured in the rocket blast and treated by medical personnel" and two other military records documenting the attack. *Haselwander*, 774 F.3d at 995. The Board denied that motion as well. *Id.* Though it found that the evidence submitted "clearly state[d] that the applicant was wounded in action," it still denied the application because "[t]here [was] no available *medical record* to corroborate the photographs" of Haselwander's injuries. *Id.* (emphasis added). So Haselwander sued. *Id.* at 996.

The D.C. Circuit reversed, holding that the Board acted arbitrarily and capriciously in denying the application. *Haselwander*, 774 F.3d at 992. It held that Haselwander's request to receive the Purple Heart necessarily incorporated within it a request to "correct his [medical] records." *Id.* at 997. The court explained that because the Army regulations require "the records of medical treatment" to be "made a matter of official army records" before a servicemember can be granted the Purple Heart, Haselwander's application, in light of his admission that the relevant

6

medical records do not exist, "was obvious[ly]" a request that "his medical records [be] corrected in order to get the Purple Heart." *Id.* at 991, 993, 997–98 (quotation omitted). The Board's decision to dismiss the application based on the lack of corroborating "medical record[s]," therefore, only perpetuated the error in his military records that Haselwander sought to fix. *Id.* at 1000. As the Circuit concluded, "[i]t simply makes no sense for the Board to say, 'We are denying his application because he has no medical records,' where the very error stated in Haselwander's application to the Board was that his Army record lacks the medical records of his injury and treatment." *Id.*

The upshot of the Circuit's decision is clear: when a servicemember asks the Board to correct his records by filling in the gap left by the missing medical records, the Board acts arbitrarily and capriciously when it denies that application based on the absence of the very medical records the applicant is seeking to replace. The logic of that position "runs in circles" and "lacks any coherence." *Haselwander*, 774 F.3d at 999–1000.

This case is just like *Haselwander*. Plaintiff seeks to correct his military records by filling in the gaps left by his missing medical records so that he may qualify for the Purple Heart. A.R. 20, 212. Yet the Board denied Plaintiff's initial application because "the Board found insufficient *medical evidence* to meet the regulatory standard for the Purple Heart." A.R. 193 (emphasis added). And it denied the reconsideration motion because "[t]here are no *contemporaneous medical record* [sic] showing [Plaintiff] received wounds/injuries caused by enemy forces that required treatment by medical personnel." A.R. 9 (emphasis added). It also reasoned that Plaintiff "has no *medical documentation* showing a loss of consciousness nor that shows he was restricted from duty for a period equaling 48 hours or more." *Id.* (emphasis added). In short, the Board denied Plaintiff's application and motion for reconsideration because "he has no medical records," which

7

is "the very error stated in [Plaintiff's] application." *Haselwander*, 774 F.3d at 1000. That reasoning "is 'largely incomprehensible' and, thus, 'unworthy of any deference.'" *Id.* (quoting *Coburn v. McHugh*, 679 F.3d 924, 926 (D.C. Cir. 2012)).

Defendant largely rejects the premise that the Board denied Plaintiff's application and motion "based solely on the absence of required medical records."[2] ECF No. 23 at 9. Instead, he argues that the Board "concluded that the evidence was insufficient to demonstrate that Plaintiff's concussion was of such severity or required such treatment as to qualify for the Purple Heart under the regulation." *Id.* That is, Defendant contends that the Board denied Plaintiff's application and motion for reconsideration not because of the missing medical records but because the *other* (non-medical) evidence he submitted did not show that Plaintiff suffered a qualifying injury or required the treatment he claims. While Defendant recognizes that he may not provide post hoc rationalizations for the Board's actions, he argues that he may provide this after-the-fact explanation for the Board's decisions because it merely fleshes out an underdeveloped rationale that the Board relied on. *See Nat'l Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D.D.C. 1996), *aff'd in part and remanded sub nom. Troy Corp. v. Browner*, 120 F.3d 277 (D.C. Cir. 1997).

The problem for Defendant is that the Board did not say that it relied on that rationale, and the Court must evaluate the reasoning the Board gave when it rejected Plaintiff's application and motion. In the Board's *one sentence* of analysis in its initial decision, it denied Plaintiff's application due to "insufficient medical evidence." A.R. 193. And in the *two* sentences of analysis

---

[2] Defendant also argues that "the injuries in [*Haselwander*] are vastly different [from the injuries here], requiring a separate analysis and making the case distinguishable." ECF No. 19-1 at 17. But that is irrelevant. *Haselwander* found that it is arbitrary and capricious to deny an application to replace lost or nonexistent medical reports simply because those medical records are lost or nonexistent. 774 F.3d at 999–1000. Here, from the explanation the Board offered, it appears to have made the same mistake. A.R. 9, 193. The nature of the injury has no part to play in that analysis.

resolving the reconsideration motion, the Board faulted Plaintiff for providing "no contemporaneous medical record" or "medical documentation." A.R. 9. The Board thus "never found that any of the [other] evidence submitted by [Plaintiff] lacked credibility" nor that Plaintiff "failed to prove that he was wounded and that he received medical treatment." *Haselwander*, 774 F.3d at 999. On the contrary, the Board's findings of fact appear to have been limited to its conclusion that "[t]he evidence shows that [Plaintiff]'s [vehicle] was involved in an IED explosion in Iraq on 30 December 2003." A.R. 9. The Board also noted that Plaintiff "contend[ed]" that he was knocked unconscious, suffered a concussion, and was placed on "light duty for several days." *Id.* But it made no findings on whether the evidence did (or did not) support those contentions, or whether those facts—if proven—would have met the regulatory standard for a Purple Heart. *See id.*³ In the end, the Board did not say that it rejected Plaintiff's application and motion because the record as a whole failed to support his claim that he suffered and was treated for a qualifying injury. The Board said it denied them because Plaintiff failed to provide "medical evidence," "contemporaneous medical record[s]," or "medical documentation." A.R. 9, 193.

For these reasons, the Court finds that the Board's decisions rested on the same circular reasoning the Circuit found to be arbitrary and capricious in *Haselwander*. So the Board's decisions were arbitrary and capricious.

The Court hastens to add that, as reflected in its discussion of the proper remedy below, none of this necessarily means that the Board's conclusion that Plaintiff was not entitled to a Purple Heart was wrong. The parties spend much time and effort in their motions on whether the evidence

---

³ Merely mentioning the legal standard governing when a servicemember is entitled to the Purple Heart does not suggest that the Board concluded—whether or not the evidence consisted of "medical records" or "medical documentation"—that all of Plaintiff's evidence did not meet that standard. ECF No. 19-1 at 17.

9

Plaintiff submitted meets the regulatory requirements for a Purple Heart. The factual record on that point seems less clear-cut than either party asserts. *Compare* A.R. 137 (evidence that the IED "knocked [Plaintiff] unconscious"), *with* A.R. 101 (evidence that the IED left Plaintiff "disoriented"). But as already alluded to, "a 'fundamental rule of administrative law' is that a court reviewing an agency's decision 'must judge the propriety of [the agency] action solely by the grounds invoked by the agency.'" *Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 436, 448 (D.D.C. 2015) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). And for the reasons explained, the explanations the Board offered when it rejected Plaintiff's application and motion for reconsideration were arbitrary and capricious.

### B. The Appropriate Remedy is Remand for Additional Administrative Proceedings

Because the Court finds that the Board acted arbitrarily and capriciously, it will grant Plaintiff's motion for summary judgment. But Plaintiff is not entitled to all the relief he seeks. Though he mainly asks the Court to set aside the Board's decisions as arbitrary and capricious and remand the case to the Board, he also asks that the Court "[o]rder the [Board] to correct Plaintiff's military records and order[] therefore that Plaintiff be awarded the Purple Heart." ECF No. 1 at 11. The Court will deny that last request for relief.

When a court concludes that agency action was arbitrary and capricious, the only relief the APA permits is "hold[ing] unlawful and set[ting] aside" that action. 5 U.S.C. § 706(2), (2)(A). So "[r]emand with vacatur is the ordinary remedy for unlawful agency action." *Sierra Club v. DOT*, 125 F.4th 1170, 1186 (D.C. Cir. 2025). Plaintiff argues that the Court should go further than that, but his arguments are unpersuasive. He argues that "[t]he contemporaneous evidence leaves no doubt that [Plaintiff] was injured, lost consciousness, suffered a concussion and was examined by medical personnel," ECF No. 16 at 16, which the Court construes as an argument that the only

10

rational decision the Board could take on remand is to correct his military records and award him a Purple Heart, *see Huff v. Vilsack*, 195 F. Supp. 3d 343, 362 (D.D.C. 2016).  But as discussed above, the Court is not convinced that the record evidence is nearly so clear.  So it will hold to the normal course of vacatur and remand but go no further.

**IV.   Conclusion**

For all the above reasons, the Court will grant Plaintiff's Motion for Summary Judgment, deny Defendant's Cross-Motion for the same, and remand this matter to the Board for further proceedings consistent with this Memorandum Opinion.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 19, 2025